**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Krueger Investments, LLC, ) | CV 12-618-PHX-JAT |
|       Plaintiffs, ) | **ORDER** |
| vs. ) | |
| Cardinal Health 110, Inc., ) | |
|       Defendants. ) | |

Plaintiffs Krueger Investments, LLC and Eagle Pharmacy, LLC ("Plaintiffs") have moved for a preliminary injunction (Doc. 28) against Cardinal Health 110, Inc., and Cardinal Health 411, Inc. (collectively "Defendants"), requesting this Court to enjoin Defendants and order them to perform under the parties' distribution contract for Plaintiffs' two pharmacy locations. After holding a hearing on July 17, 2012, the Court enters the following Findings of Fact and Conclusions of Law and denies Plaintiffs' request for preliminary injunctive relief.

**I.   BACKGROUND**

On March 2, 2012, Plaintiffs filed suit against Defendants in the Superior Court of Arizona, Maricopa County. In their Complaint, Plaintiffs allege breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference with contractual relations and business expectancy. Doc. 1-1 at 4–11. As relief, Plaintiffs seek: (1) a declaratory judgment that Defendants' refusal to sell pharmaceutical products to Plaintiffs

1  is a breach of the agreement; (2) specific performance and injunctive relief requiring
2  Defendants to reinstate and fully perform under the parties' distribution contract for Eagle
3  Pharmacy's two pharmacy locations; (3) attorneys' fees and costs pursuant to A.R.S. §§ 12-
4  341 and 12-341.01; and (4) compensatory, consequential, and incidental damages in an
5  amount to be proven at trial. *Id*.

6  The case (No. CV 2012-004620) was assigned to Superior Court Judge Arthur T.
7  Anderson, who issued a Temporary Restraining Order in favor of Plaintiffs. All parties
8  agreed that the Temporary Restraining Order would remain in effect until the Superior Court
9  conducted an evidentiary hearing on Plaintiffs' preliminary injunction request. Prior to the
10 Superior Court's hearing, however, Defendants removed the action to this Court. As a result,
11 the Superior Court's Temporary Restraining Order remained in effect until this Court's
12 hearing and decision on a motion for preliminary injunction.

13 On May 23, 2012, Plaintiffs moved for a Preliminary Injunction against Defendants
14 pursuant to Rule 65 of the Federal Rules of Civil Procedure. The Court now rules on
15 Plaintiffs' motion.

16 **II.     FINDINGS OF FACT**

17 Plaintiffs Krueger Investments, LLC and Eagle Pharmacy, LLC are Arizona limited
18 liability companies with their principle places of business in Phoenix, Arizona. Plaintiffs are
19 duly authorized to transact and are actually transacting business in the State of Arizona.

20 Defendant Cardinal Health 110, Inc. is a Delaware corporation with its principle place
21 of business in Dublin, Ohio. Cardinal Health 110, Inc. is duly authorized to transact and is
22 actually transacting business in the State of Arizona as a foreign corporation.

23 Defendant Cardinal Health 411, Inc. is an Ohio corporation with its principle place
24 of business in Dublin, Ohio. Cardinal Health 411 is duly authorized to transact and is actually
25 transacting business in the State of Arizona as a foreign corporation.

26 The parties' relationship is governed by two kinds of contracts: a Prime Vendor
27 Agreement ("PVA") between Defendants and American Associated Pharmacies, Inc. (a
28 group purchasing organization of which Plaintiffs are members) and two Member

Certification Agreements ("MCA") between Defendants and Plaintiffs. Doc. 11 at 10–13.

On or about September 9, 2009, Plaintiffs' Eagle Pharmacy #2, a retail pharmacy located at 38th Street and Bell Road, entered into an MCA with Defendants to purchase pharmaceutical products, including controlled substances. Defendants later entered into a second MCA with Plaintiffs' Eagle Pharmacy #1, a retail pharmacy located at 59th Avenue and Bell Road, with the same purchase terms.

In the MCAs (collectively, the "Agreement"), Plaintiffs agreed to purchase pharmaceuticals from Defendants pursuant to the terms of the PVA. The PVA's terms require Plaintiffs to comply with any applicable rules, regulations, ordinances, and guidance of the Drug Enforcement Administration ("DEA") related to the purchase, receipt, possession, storage, use, dispensation, and distribution of pharmaceutical products, including controlled substances. The terms of the Agreement also stipulate that Cardinal Health may terminate the Agreement immediately in the event it reasonably determines that Plaintiffs are in breach of the PVA.

On January 4, 2012, Defendants conducted a compliance review of Eagle Pharmacy #2 to determine if diversion of controlled substances might be occurring. Inventory inconsistencies and the disproportionately large quantities of controlled substances sold by Plaintiffs led Defendants to determine that Plaintiffs posed a risk of diversion. Pursuant to the Controlled Substances Act ("CSA"), 21 U.S.C. § 801, and guidance from the DEA, Defendants subsequently terminated all shipments of controlled substances to Plaintiffs in February 2012.

Following Defendants' termination of controlled substance shipments to Plaintiffs, Compliance Officer Ed Hunter of the Arizona State Board of Pharmacy conducted an ordering and dispensation inspection of Eagle Pharmacy #2 on February 29, 2012. As a result of that inspection, Plaintiffs were issued a citation for violating A.R.S. § 36-2523 (drug overages and shortages) and Arizona Administrative Code R4-23-11(B)(a) (stocking drugs that exceed their expiration date); however, Mr. Hunter made no specific findings of diversion and the Arizona State Board of Pharmacy took no adverse action against the

- 3 -

1 licensing of Eagle Pharmacy or Mr. Bryan Krueger, Pharmacist in Charge at Eagle Pharmacy
2 #2.
3     To date, the DEA has taken no adverse action against the licensing of Plaintiffs. Nor
4 has any regulatory body, state or federal, found that Plaintiffs are actually diverting
5 controlled substances.
6     To date, Plaintiffs have been unable to contract with a replacement distributor that is
7 willing to meet Eagle Pharmacy's total demand for pharmaceutical products. Mr. Krueger
8 testified at the hearing that AmerisourceBergen has agreed to contract with Eagle Pharmacy
9 as long as supply restrictions are placed on certain classes of controlled substances and that
10 those restrictions would not allow Plaintiffs to stay in business. Mr. Krueger also testified
11 that McKesson is still considering whether to supply Plaintiffs with controlled substances.

## III. CONCLUSIONS OF LAW

13     To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood
14 of success on the merits; (2) a likelihood of irreparable harm to the moving party in the
15 absence of preliminary relief; (3) that the balance of equities tips in the favor of the moving
16 party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council,*
17 *Inc.*, 129 S. Ct. 365, 376 (2008); *Am. Trucking Assoc., Inc. v. City of Los Angeles*, 559 F.3d
18 1046, 1052 (9th Cir. 2009).

19     A preliminary injunction is "an extraordinary and drastic remedy, one that
20 should not be granted unless the movant, by a clear showing, carries the burden of
21 persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted); *See also*
22 *Landrigan v. Brewer*, 625 F.3d 1132, 1140 (9th Cir. 2010); *Stormans, Inc. v. Selecky*, 586
23 F.3d 1109, 1127 (9th Cir. 2009).

24     "The basic function of a preliminary injunction is to preserve the status quo pending
25 a determination of the action on the merits." *Chalk v. U.S. Dist. Court Cent. Dist. of*
26 *California*, 840 F.2d 701, 704 (9th Cir. 1988) (citing *Los Angeles Mem'l Coliseum Comm'n*,
27 634 F.2d at 1200 (citations omitted)).

28     But "[a] mandatory injunction 'goes well beyond simply maintaining the status quo

- 4 -

1 pendente lite [and] is particularly disfavored.'" *Stanley v. Univ. of S. Calif.*, 13 F.3d 1313,
2 1320 (9th Cir. 1994) (citing *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)
3 (internal citation omitted)). The status quo means "the last, uncontested status which
4 preceded the pending controversy." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH &*
5 *Co.*, 571 F.3d 873, 879 (9th Cir. 2009).

6 Because "[a] mandatory injunction orders a responsible party to take action," *id.*, and
7 here Plaintiffs seek an order requiring Defendants to reinstate and fully perform under the
8 parties' distribution agreement, the test for a mandatory preliminary injunction applies.

9 There is a heightened burden where a plaintiff seeks a mandatory preliminary
10 injunction, which should not be granted "unless the facts and law clearly favor the plaintiff."
11 *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation
12 omitted).

13 Under the general rule, "where the party seeking a preliminary injunction fails to
14 satisfy any one of the *Winter* factors, the preliminary injunction must be denied." *Video*
15 *Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 Fed. Appx. 89, 92 (9th Cir. 2009)
16 (citing *Winter,* 129 S. Ct at 375–76). Notably, however, the Ninth Circuit does allow the
17 issuance of a preliminary injunction when "a plaintiff demonstrates . . . that serious questions
18 going to the merits were raised and the balance of hardships tips sharply in the plaintiff's
19 favor . . . . Of course, plaintiffs must also satisfy the other [two] *Winter* factors." *Alliance for*
20 *the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (quoting *Lands Council*
21 *v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc)).

22 Under the Ninth Circuit's alternative standard, Plaintiffs have demonstrated serious
23 questions going to the merits of the case. Specifically, the VPA provides that Defendants can
24 terminate the Agreement if Plaintiffs fail to comply with all applicable laws, rules,
25 regulations, ordinances and guidance of the DEA.

26 Defendants have demonstrated that several of the factors flagged by the DEA as
27 indicative of possible diversion—the ordering of a limited variety of controlled substances in
28 quantities disproportionate to the quantity of non-controlled medications ordered, one or more

practitioners writing a disproportionate share of the prescriptions for controlled substances that were filled by Plaintiffs, high purchase rates for controlled substances, and the placement of orders of unusual frequency—were present when they chose to cease all shipments of controlled substances to Plaintiffs.

However, it remains unclear whether mere suspicion of wrongful activity is enough to constitute a failure by Plaintiffs to comply with all applicable laws, rules, and guidance of the DEA, as required before Defendants can terminate for violation of the VPA. Plaintiffs maintain that Eagle Pharmacy was in full compliance with the terms of the VPA when Defendants terminated the Agreement, and neither the DEA nor the State Board of Pharmacy has taken any adverse action against Eagle Pharmacy for diversion, despite receiving notification of Eagle Pharmacy's exact ordering patterns.

Despite raising serious questions going to the merits of the case, Plaintiffs fail to demonstrate that the equities tip sharply in their favor. In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 129 S. Ct. at 376–77 (2008) (citations omitted).

Plaintiffs allege that a substantial portion of their business will be lost due to the termination of the Agreement. Specifically, Plaintiffs argue that the severance of a vital supply of pharmaceutical product and subsequent loss of revenue and customer patronage will force Eagle Pharmacy to go out of business. Mr Krueger also testified that Plaintiffs have been and may continue to be unable to locate a new controlled substance distributor due to the highly regulated nature of these drugs and the circumstances surrounding Defendants' termination of the Agreement. Plaintiffs believe that these hardships, coupled with the inconvenience some patients may experience if required to switch pharmacies, are imminent and particularly inequitable given that Eagle Pharmacy was and continues to be fully compliant and licensed by all applicable governmental authorities.

On the other hand, there is substantial evidence that Defendants could experience considerable hardship should a preliminary injunction require Defendants to continue to supply Plaintiffs with controlled substances despite Defendants' obligation to voluntarily

1 cease all shipments to customers involved in suspected diversion. *See Cardinal Health, Inc.*
2 *v. Holder*, No. 12-185, 2012 U.S. Dist. LEXIS 29684, at *9, *60 (D.D.C. Mar. 7, 2012)
3 (Upholding the DEA's suspension of Cardinal Health's distributor registration). Here, the
4 revocation of Defendants' DEA registration or the closure of their Phoenix distribution center,
5 which ships approximately 140 million dosage units of prescription drugs per month and
6 services more than 2,200 customer accounts in Arizona, California, Nevada, New Mexico,
7 and Texas, would create significant hardship to Defendants, their other customers, and the
8 consumer.

9 While the Court does not question the seriousness of Plaintiffs' lost revenue concern
10 and the inconvenience that some current Eagle Pharmacy customers may experience should
11 they be required to fill controlled substance prescriptions at alternative pharmacies, Plaintiffs
12 fail to demonstrate that the balance of equities tips *sharply* in their favor.

13 Even if Plaintiffs could demonstrate that the balance of equities tips sharply in their
14 favor, Plaintiffs are still required to show that there is a likelihood of irreparable injury and
15 that injunctive relief is in the public interest. *See Alliance for the Wild Rockies*, 632 F.3d at
16 1134-35.

17 Here, Plaintiffs have failed to demonstrate sufficient irreparable harm in the absence
18 of an injunction. To obtain injunctive relief, "a plaintiff must *demonstrate* immediate
19 threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs.*
20 *Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original).

21 Courts can consider economic hardship, actual or threatened loss of customers,
22 business reputation, and goodwill in determining the presence and sufficiency of irreparable
23 harm. *See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc*., 944 F.2d 597,
24 603 (9th Cir.1991) (finding that damage to reputation or customer relationships may support
25 a finding of irreparable harm because it is difficult to quantify). *But see, e.g.*, *Goldie's*
26 *Bookstore v. Sup. Ct*., 739 F.2d 466, 472 (9th Cir. 1984) (rejecting plaintiff's claim of loss of
27 "goodwill and 'untold' customers" because the injury was not substantiated by any factual
28 allegations and was too speculative to establish a claim of irreparable injury).

1      Irreparable harm must also be accompanied by an inadequacy of legal remedies. *In re*
2  *Estate of Ferdinand Marcos*, 25 F.3d 1467, 1477 (9th Cir. 1994) (citing *Los Angeles Coliseum*
3  *Comm'n*, 634 F.2d at 1202). In other words, a preliminary injunction cannot typically issue
4  when the alleged harm can be remedied by money damages alone. *See Stanley*, 13 F.3d at
5  1320-21 (to obtain a preliminary injunction, the moving party must demonstrate that the
6  remedy at law is inadequate).

7      Here, although Plaintiffs argue that "it is a virtual certainty that the business will not
8  be able to survive" if they are unable to sell controlled substances, Plaintiffs failed to
9  substantiate this claim by showing that their business cannot continue based on either the sale
10 of non-controlled substances alone or in combination with their other suppliers of controlled
11 substances. For example, Mr. Kreuger testified that other large pharmaceutical wholesalers,
12 specifically AmerisourceBergen and McKesson, have either conditionally accepted or are still
13 considering Plaintiffs' request for an alternative supplier. Plaintiffs' lack of proof regarding
14 imminent irreparable harm therefore prevents Plaintiffs from "demonstrating" the kind of
15 irreparable harm necessary for this Court to order injunctive relief.

16     Moreover, Plaintiffs' allegations that Eagle Pharmacy will suffer irreparable harm due
17 to a general loss of sales or the complete cessation of operations are unpersuasive in light of
18 the evidence presented at this stage. Plaintiffs have failed to introduce non-conclusory
19 evidence related to unquantifiable harm such as loss of customer relationships or damaged
20 reputation.

21     Although Plaintiffs claim that their harm cannot be compensated, the Court finds that
22 the loss of sales revenue due to Plaintiffs' inability to obtain and sell controlled substances
23 can be calculated with relative accuracy. Given the availability of Plaintiffs' historic purchase
24 and sales data, coupled with the fixed term of the Agreement, this Court finds that a
25 reasonable basis exists for calculating the loss of future revenue due to Defendants' decision
26 to cease all shipments of controlled substances to Plaintiffs. Because Plaintiffs have adequate
27 legal remedies, they do not need injunctive relief.

28     Finally, Plaintiffs failed to demonstrate that an injunction is in the public interest.

Although the denial of a preliminary injunction may impact the convenience that some of Plaintiffs' customers currently enjoy in procuring pain medication, customer access to these prescription drugs via alternative pharmacies would remain unchanged.

Furthermore, it is clearly in the public interest for Defendants, and all pharmaceutical distributors, to prevent the abuse and diversion of controlled prescription drugs into illicit channels, especially where Plaintiffs' activities pose a risk of diversion based on DEA guidelines and regulations. The DEA has been explicit on this point. Doc. 32-1 at 3 ("Failure to maintain effective controls against diversion is inconsistent with the public interest.").

Accordingly, because the public's interest in obtaining prescriptions from the pharmacy of its choice does not outweigh the public's interest in preventing the abuse and diversion of controlled prescription drugs, the Court finds that Plaintiffs have not demonstrated that an injunction is in the public interest.

**IV.　CONCLUSIONS**

For the reasons discussed above, Plaintiffs have not met their burden of demonstrating that they are entitled to a mandatory preliminary injunction requiring Defendants to resume the shipment of controlled substances pursuant to the Agreement.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for a Preliminary Injunction (Doc. 28) is denied.

**IT IS FURTHER ORDERED** that Defendants' Motion to File Sur-Reply *Instanter* (Doc. 39) is denied.

DATED this 24th day of July, 2012.

_____
James A. Teilborg
United States District Judge